**DAVID J. HOLDSWORTH** (4052)
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT 84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| TED D. VALLEJOS,<br><br>Plaintiff,<br><br>v.<br><br>ORBITAL ATK, INC.,<br><br>Defendant. | : | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)**<br><br>Civil No. 2:20-cv-00101-PMW<br><br>Hon. Paul M. Warner |

COMES NOW, Ted D. Vallejos, Plaintiff herein, complains of Defendant Orbital ATK, Inc., demands trial by jury, and as for causes of action, alleges as follows:

## PARTIES

1. Plaintiff Ted D. Vallejos (hereinafter "Plaintiff") is a citizen of the United States and a resident of the State of Utah.

2. The entity named as Defendant herein is Orbital ATK, Inc. At all times relevant hereto, Orbital ATK, Inc. (hereinafter "Defendant"), employed 15 or

more employees and was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

**JURISDICTION AND VENUE**

3. Plaintiff brings this appeal and files his Statement against the Defendant alleging violations of Title VII if the Civil Rights Act and the ADA, as amended, which provide that it is unlawful to discriminate against an employee in his employment on the basis of his gender, national origin, race, and disability and to retaliate against an employee for engaging in protected activity. The Court has subject matter jurisdiction pursuant to federal question.

4. On May 2, 2017, Plaintiff filed a Charge of Discrimination in which he alleged that Defendant discriminated against him based on his gender, national origin, race, and disability. Plaintiff also alleged that Defendant subjected him to unlawful retaliation.

5. Plaintiff filed his Charge of Discrimination within 180 days from the last date of the alleged harm. Thus, all jurisdictional requirements have been met as required by the Title VII and the ADA, as amended.

6. The Court may consider for its determination all events that occurred between November 3, 2016, the 180-day jurisdictional mark, and the date of filing. The Court may treat all other events occurring prior to November 3, 2016, as

being untimely for purposes of relief, but may give weight to evidence of such events for evidentiary purposes.

**STATEMENT OF FACTS**

7. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through ___ above as if alleged in full herein.

8. Plaintiff is male, Hispanic, with ancestors from Spain.

9. Plaintiff alleges he has a back impairment which substantially limits several of his major life activities.

10. Plaintiff was hired by Defendant in June of 2014 to work as a Maintenance Mechanic. Plaintiff's essential job duties include working on machines and occasionally lifting up to 50 pounds.

11. On March 30, 2016, Plaintiff requested FMLA leave trough Sedgwick ("Sedgwick"), Defendant's third party leave provider, which was granted between March 24, 2016, and June 13, 2016.

12. In April of 2016, Plaintiff underwent surgery due to his back impairment and was off work for five to six weeks. He applied for and covered his absences under the Family Medical Leave Act ("FMLA") and short-term disability. Plaintiff alleges that he returned to work under medical restrictions. When Plaintiff returned to work on June 14, 2016, Plaintiff was medically restricted in bending,

twisting, and lifting more than 20 pounds for two months. Plaintiff alleges his back impairment substantially limits him in his major life activities of lifting and carrying, bending, twisting, sleeping and working.

13. While Plaintiff was on leave, his supervisor, Ron Secrist (hereinafter "Secrist), promoted Plaintiff to Senior Maintenance Technician, which included a pay raise.

14. Plaintiff alleges that, when he returned to work after the back surgery, Defendant assigned him to work on preventative maintenance. Even though Defendant never specifically asked him to violate his medical restrictions, Plaintiff felt pressure from Defendant to lift objects weighing more than ten pounds because everyone was too busy to help and he had no other alternative than to do it himself.

15. Plaintiff alleges that, occasionally, he informed Defendant that performing certain tasks would violate his medical restrictions. Plaintiff alleges that he feared termination if he did not voluntarily violate his lifting restrictions and so he kept doing his job as best he could.

16. Plaintiff alleges that he eventually asked for the accommodation of having Defendant comply with his medical restrictions. In August of 2016, Defendant notified Plaintiff that his restrictions were about to expire and asked him to

provide updated restrictions or a release to regular duty. On August 24, 2016, Plaintiff provided Defendant with updated restrictions of no lifting more than 40 pounds.

17. Plaintiff alleges that he is also diabetic and, due to such impairment, requested to be assigned to the day shift to better regulate his diabetes and because of a need to help his wife, who has multiple sclerosis, diabetes, as well as experiencing panic attacks at night.

18. Plaintiff also alleges that, because of his own diabetes he cannot work night shifts because he fell asleep one time on the way home from work. Plaintiff also explained to Secrist that he had to be home at night to be able to drive his wife to the emergency room in case of a "panic attack or stroke". He alleges that he provided Defendant with a doctor's note showing the need to be assigned to day shift to the Operations Manager, Secrist, who was also Plaintiff's immediate supervisor.

19. On October 28, 2016, Plaintiff provided a note from a physician's assistant stating only "Patient is currently under my medical care and is unable to work night shifts due to his own medical condition and his wife's medical condition".

20. Then, in November 2016, after experiencing complications related to the first back surgery, Plaintiff underwent a second back surgery. Plaintiff was then off work for approximately ten weeks, which was again covered by FMLA and short-term disability.

21. Upon completion of both operations, Plaintiff was medically restricted from lifting more than ten pounds, bending, twisting, or stooping. Plaintiff alleges that he is medically restricted, but is still able to work.

22. On January 2, 2017, Plaintiff returned to work with medical restrictions of no bending, twisting, and no lifting more than ten pounds for one month.

23. Plaintiff alleges Defendant granted his request to work day shifts for approximately three months. Plaintiff alleges that, in approximately January of 2017, Defendant recanted its prior accommodation and placed Plaintiff on shift rotations, yet, at the same time, allowed other employees to choose their shifts.

24. Plaintiff alleges that another employee, Dan Palmer ("Palmer") (male, Caucasian), had a spouse who was alcoholic and that Defendant accommodated Palmer by moving Palmer to day shift so that Palmer could take care of his wife.

25. On January 5, 2017, Plaintiff provided a doctor's note stating "[Plaintiff] is unable to work night shifts because he is needed to care for his wife in the evenings. She has multiple sclerosis which is a debilitating neurological conditions. She also suffers from hypertension and panic attacks. [Plaintiff] also has diabetes and an alternative schedule could worsen his blood sugars".

26. Plaintiff alleges that, when his shift was changed to rotations, he complained to the Senior Manager of Engineering, Chris Desborough ("Desborough"),

and to Senior Human Resource Generalist, Ranae Hadley-Dickey ("Hadley-Dickey"), that he felt the change in his shifts was discrimination based on his race, national origin, and disability. Plaintiff alleges Defendant did not reinstate the previous accommodation of allowing him to work day shifts.

27. On January 30, 2017, Plaintiff and a coworker agreed to trade shifts. Even though they possessed different skill sets, Secrist approved the change, which allowed Plaintiff to remain on day shift. Plaintiff alleges this was a temporary fix, not a permanent one.

28. On February 15, 2017, Plaintiff provided an updated medical restrictions to Defendant which limited Plaintiff to no bending, twisting, and no lifting more than 20 pounds.

29. Plaintiff alleges that, on or about April 1, 2017, Plaintiff alleges that he advised a female coworker to "be in an alcohol free relationship" and asked her and other women coworkers if they would be interested in going with a group of Plaintiff's friends to Las Vegas. A few days later, this female coworker then accused Plaintiff of sexual harassment. Defendant then suspended Plaintiff with pay.

30. Plaintiff alleges that, while he was on suspension, management informed him that he was restricted from returning to work and that his suspension was then changed to leave without pay.

31. On April 6, 2017, Plaintiff's union notified him that "it didn't look good" for him and that the Defendant was likely going to terminate his employment for "sexual harassment". Upon receiving that report, Plaintiff, in order to prevent a sexual harassment complaint from being placed in his personnel file, which might damage his career and employability, chose to resign. Plaintiff alleges that Defendant's actions of placing him in such a situation constituted a constructive discharge.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DEFENDANT FAILED TO ACCOMMODATE PLAINTIFF'S DISABILITY

32. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 31 above as if alleged in full herein.

33. In order to establish a claim of failure to accommodate, Plaintiff must allege facts which establish, or tend to establish, that: (1) he has a physical or mental impairment that substantially limits one or more of the major life activities; (2) he was qualified in that he was able to perform the essential functions of the job he held or desired, with or without reasonable accommodation; (3) he requested a reasonable accommodation or Defendant knew or should have known of his need for

an accommodation; and (4) Defendant refused, declined or failed to provide a reasonable accommodation. *Sanchez v. Vilsack,* 695 F.3d 1174, 1177 (10th Cir. 2012).

34. In order to establish the first element of a prima facie case, Plaintiff alleges that he has impairments which are substantially limiting to one or more major life activities. Plaintiff alleges that he has a back impairment that limits his ability to sit, stand, lift and carry heavy items, bend, twist, stoop, and crouch. Plaintiff also alleges that he has diabetes, which limits his ability to work on shifts other than day shifts.

35. Under the Americans with Disabilities Act Amendments Act ("ADAAA"), disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment". 42 U.S.C. § 12102 (2). Whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual. 29 C.F.R. § 1630.2 (j). The term "substantially limited" means, among other things, "[u]nable to perform a major life activity that the average person in the general population can perform," or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner, or

duration under which the average person in the general population can perform that same major life activity". 29 C.F.R. § 1630.20 (j).

36. Plaintiff is a person with a disability in that his conditions are substantially limiting to several major life activities.

37. Plaintiff's allegations satisfy the first element of his prima facie case.

38. In order to establish the second element of a prima facie case, Plaintiff alleges that he was qualified to perform the essential functions of the position he held or desired, with or without a reasonable accommodation. Plaintiff identifies the essential functions of his position as fixing machines and occasionally lifting up to 50 pounds. He alleges that with the accommodation of lifting restrictions and being assigned to only the day shift he was qualified for the position he held or desired.

39. Plaintiff's allegations satisfy the second element of his prima facie case.

40. In order to establish the third element of a prima facie case, Plaintiff alleges that he requested various reasonable accommodations. Under the ADAAA, an employee "has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations". *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1172 n.9 (10th Cir. 1999). Plaintiff alleges that

he requested that he be limited to no bending, twisting, stooping, and a ten-pound lifting restriction (which gradually increased), as well as being assigned to exclusively the day shift.

41. Plaintiff's allegations satisfy the third element of his prima facie case.

42. Finally, in order to establish the fourth element of a prima facie case, Plaintiff alleges that Defendant refused, declined or failed to afford him reasonable accommodations. Plaintiff alleges Defendant violated his lifting restrictions by causing him to feel pressured to violate his lifting restrictions. Plaintiff alleges that, by assigning Plaintiff to shift rotation, Defendant failed to accommodate Plaintiff.

43. Plaintiff's allegations satisfy the fourth element of his prima facie case.

44. Plaintiff's allegations state a prima facie case of failure to accommodate.

**SECOND CAUSE OF ACTION**
**DEFENDANT DISCRIMINATED AGAINST**
**PLAINTIFF BECAUSE OF HIS DISABILITY**

45. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 44 above as if alleged in full herein.

46. In order to establish a claim of discrimination based on disability, Plaintiff must allege facts which establish, or tend to establish, that: (1) he is disabled in that he has an impairment which is substantially limiting in a major life activity; (2) he was otherwise qualified in that he could perform the essential duties of the position he held or desired, with or without reasonable accommodation; (3) Defendant subjected him to an adverse action and; (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. *Carter v. Pathfinder Energy Servs., Inc.,* 662 F.3d 1134, 1142 (10th Cir. 2011); *accord Zwygart v. Bd. of Cnty Comm'rs,* 483 F.3d 1086, 1090 (10th Cir. 2007).

47. As set forth above, Plaintiff is a person with a disability.

48. As set forth above, Plaintiff was qualified to perform the essential duties of the position he held or desired, with or without an accommodation.

49. In order to establish the third element of a prima facie case, Plaintiff alleges that Defendant subjected him to an adverse employment action or a constructive discharge. "A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign". *See Exum v. U.S. Olympic Comm.,* 389 F.3d 1130, 1135 (10th Cir. 2004).

50. Plaintiff alleges Defendant subjected him to an adverse employment action. An adverse employment action includes "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits". *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007) (*internal quotation omitted*). Plaintiff alleges Defendant took adverse action against him on December 27, 2016, when, after working day shift consistently for several years, Defendant notified Plaintiff that, on January 30, 2017, it would place him on the rotating shift schedule. Defendant also took adverse action against him on or about April 1, 2017, when Defendant suspended Plaintiff and then suspended him without pay.

51. Plaintiff also alleges that he was constructively discharged because there is evidence to show that he did not have a "free choice" in his continued employment. Plaintiff alleges that he was forced to resign to prevent a claim of sexual harassment from being placed in his personnel file.

52. Plaintiff's allegations satisfy the third element of his prima facie case.

53. To establish the fourth element of a prima facie case, Plaintiff alleges that the circumstances surrounding the adverse action give rise to an inference of discrimination. Potential circumstances that support an inference of discrimination

include, but are not limited to: (1) disparate treatment which but for the employee's protected trait would be different, *International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 200 (1991); or (2) evidence that the protected trait actually motivated the employer's decision. *Phillips v. Martin Marietta Corp,*. 400 U.S. 542, 544 (1971).

54. Plaintiff alleges Defendant granted similarly situated employees the opportunity t9o work only on the day shift, but did not provide Plaintiff with the same accommodation, requiring Plaintiff to have to come up with a temporary fix on his own.

55. Plaintiff alleges that the change to rotational shifts and his unpaid suspension were connected to his disability.

56. Plaintiff's allegations satisfy the fourth element of his prima facie case.

57. Plaintiff's allegations state a prima facie claim of discrimination on the basis of disability.

**THIRD CAUSE OF ACTION**
**DEFENDANT RETALIATED AGAINST PLAINTIFF**

58. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 57 above as if alleged in full herein.

59. In order to establish a claim of retaliation, Plaintiff must allege facts which establish, or tend to establish, that: (1) he engaged in protected opposition

to discrimination; (2) contemporaneous with or subsequent to the protected activity, Defendant subjected him to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 2414-15 (2006)).

60. Plaintiff may establish the first element in several ways. Plaintiff alleges that he opposed a discriminatory practice. The Tenth Circuit has held that, although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [antidiscrimination statutes]". *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008). Plaintiff may also establish the first element by alleging that he requested a reasonable accommodation. *See Wehrley v. American. Fam. Mut Ins. Co.,*513 F.App'x 733, 740 (10th Cir. 2013) (citing *Jones v. U.P.S., Inc.,* 502 F.34 1176, 1194 (10th Cir. 2007)).

61. Plaintiff alleges that, in April 2016 and again in November 2016, he requested to be accommodated by having Defendant honor his bending, twisting, stooping, and lifting restrictions. Plaintiff alleges that, on January 5, 2017, he requested to be assigned strictly to day shift as a reasonable accommodation for his

diabetes disability. Plaintiff also alleges that in January of 2017, he complained of discrimination to Desborough and Hadley-Dickey.

62. Plaintiff's allegations satisfy the first element of his prima facie case.

63. In order to establish the second element of a prima facie case, Plaintiff alleges that, after he engaged in protected activity, Defendant subjected him to adverse employment actions. The Supreme Court has set forth the standard to be used in determining what constitutes an adverse employment action. Specifically, the action must be materially adverse to a reasonable employee or applicant. The Supreme Court explained that "materially adverse" means that the harm must be significant. It also explained that the determination must be made objectively, and thus must be measured against how a "reasonable person" would feel or act, an employee must show that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination". However, the Supreme Court emphasized that whether any given act constituted retaliation may depend upon the particular circumstances. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).

64. Plaintiff alleges that Defendant took adverse action against him on or about December 27, 2016, when it assigned him to the rotating shift, and on April 1, 2017, when it suspended Plaintiff, which it later converted to a punitive (without pay)

sanction and then constructively discharged him. Plaintiff's transfer to a different shift was an adverse action. Plaintiff's unpaid suspension was also materially adverse, especially when Plaintiff was never reimbursed for these hours. Plaintiff's constructive discharge was also an adverse action.

65. Plaintiff's allegations satisfy the second element of his prima facie case.

66. In order to establish the third element of a prima facie case, Plaintiff alleges a causal connection between the protected activity and the adverse action. A "causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by an adverse action". *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1258 (10th Cir. 2001) (quoting *Burrus v. United Tel. Co. of Kansas Inc.,* 683 F.2d 339, 343 (10th Cir. 1982)). In the instant case, about three months separated Plaintiff's most recent request for an accommodation and his unpaid suspension. This supports the inference that Defendant suspended Plaintiff because of his requests for accommodation.

67. Plaintiff's allegations satisfy the third element of his prima facie case.

68. Plaintiff's allegations state a prima facie claim of unlawful retaliation.

## IV. DAMAGES

69. Mr. Vallejos alleges Defendant's actions and inactions have caused him various losses, injuries and other damages, including lost wages, lost benefits, damages to his employability and emotional distress.

## V. RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1. Declaring that Defendant discriminated against Mr. Vallejos on the basis of his disability and retaliated against him, in violation of the UADA;
2. Awarding Mr. Vallejos "make whole" relief, including awarding Mr. Vallejos lost wages and benefits from the time Defendant terminated Mr. Vallejos until it reinstates him;
3. In lieu of reinstatement, awarding Mr. Vallejos the lost wage and lost benefit differential from the time Defendant terminated Mr. Vallejos until Mr. Vallejos secures comparable employment, or for a period of five years, whichever occurs first;
4. Awarding Mr. Vallejos his reasonable attorney's fees and costs;

5. Awarding Mr. Vallejos such other relief as may be just and equitable.

DATED this 18th day of February, 2020.

/s/ David J. Holdsworth
David J. Holdsworth
*Attorney for Plaintiff*

VERIFICATION

Ted Vallejos, being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of his own knowledge, except as to those matters alleged on information and belief which he believes to be true.

_________________________________
Ted Vallejos

SUBSCRIBED AND SWORN to before me, a Notary Public, this ____ day of February, 2020.

____________________________________
NOTARY PUBLIC

MY COMMISSION EXPIRES: RESIDING AT: ______________________

____________________________________